**In re: Charlotte FRANKS, Debtor(s).**

**No. 02–37602.**

United States Bankruptcy Court, N.D. Ohio.

Nov. 8, 2006.

William E. Huber, Saint Marys, OH, for Debtor.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause is before the Court on the Debtor's objection to B–Line, LLC's proof of claim. The sole remaining issue on the objection is the Debtor's request for sanctions. On their respective positions, both Parties filed supporting memoranda. The Court has now had the opportunity to consider the arguments raised by the Parties, and finds, for the reasons that will now follow, that B–Line is not liable for sanctions.

## FACTS

The relevant events began when the Debtor, Charlotte Marie Franks (hereinafter "Debtor"), filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Georgia on June 15, 1998. The creditors in that case, among others, included the Bank of America, which had filed a proof of claim for an unsecured debt in the amount of $2,471.96. On October 9, 1998, a discharge order was entered by the Court pursuant to 11 U.S.C. § 727(a).

Subsequently, on November 5, 2002, Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code before this Court. Shortly thereafter, in December 2002, Bank of America assigned to the Claimant, B–Line, LLC (hereinafter "B–

Line") the Debtor's account as part of a "bundle" assignment. B–Line maintains that the file purchased from Bank of America did not include notice of the Debtor's previous Chapter 7 bankruptcy and discharge. After B–Line received the assignment of Debtor's account, it filed a proof of claim for the debt, before this Court, signed by an authorized agent of B–Line. The proof of claim form filed by B–Line was stamped "copy mailed to trustee." B–Line alleges that it also served a copy of the form on the Debtor's attorney, but Debtor's attorney denies ever receiving a copy of the form until a copy was mailed to him by the Trustee on April 28, 2006.

On May 9, 2006, the Debtor filed an objection to B–Line's claim, requesting that B–Line return all monies paid to it by the Trustee. In addition, Debtor requested that B–Line be sanctioned in the form of attorney fees ($1,531.25) and other out-of-pocket expenses ($453.13) incurred by the Debtor as a result of handling the objection. During the course of Debtor's Chapter 13 case, the Trustee paid $1,266.48 to B–Line pursuant to Debtor's plan of reorganization. B–Line withdrew its claim on May 23, 2006, and shortly thereafter returned to the Trustee all monies that had been paid to it. B–Line contests the motion for sanctions, arguing that it reasonably relied on the warranties and representations made to it by Bank of America and that it had neither actual nor constructive knowledge of the Debtor's prior discharge.

## DISCUSSION

■ The resolution of Debtor's request for sanctions under its objection to claim involves the discharge injunction of 11 U.S.C. § 524(a). Determinations as to a violation of the discharge injunction and an award of damages thereunder, as well as determinations regarding the disallowance of a claim, are core proceedings over which this Court has been conferred with the jurisdictional authority to enter final orders. 28 U.S.C. § 157(b)(2)(B)/(O); *In re Perviz*, 302 B.R. 357, 364–65 (Bankr. N.D.Ohio 2003).

■ In a Chapter 7 case, 11 U.S.C. § 727 provides that "the court shall grant the debtor a discharge" except under certain conditions, none of which apply here. Under 11 U.S.C. § 524, an effect of a court's entry of an order of discharge is to operate "as an injunction against the commencement or continuation of an action ... or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." This is known generally as the "discharge injunction."

■ In the Sixth Circuit, it is well settled that, while there is no private cause of action under § 524 for a creditor's violation of the discharge injunction, a violation may warrant the imposition of sanctions for civil contempt. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000); *In re Lover*, 337 B.R. 633, 635 (Bankr.N.D.Ohio 2005). The power of courts to hold parties in contempt generally arises out of their inherent need to be able to "impose ... submission to their lawful mandates." *United Mine Workers of America v. Bagwell*, 512 U.S. 821, 831, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994), *quoting Anderson v. Dunn*, 19 U.S. 204, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821). Regarding bankruptcy courts, the power is also established pursuant to 11 U.S.C. § 105(a), which states that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *In re Lafferty*, 229 B.R. 707, 713 (Bankr.N.D.Ohio 1998).

■ For the Court to hold a party in contempt for violating a court order, e.g., a discharge order, the moving party must prove that the order was "definite and specific" and that the offending party "knowingly violated" it. *In re Lover*, 337 B.R. at 635. In the instant case, there is no dispute that the discharge order was a "definite and specific" court order. Thus, the only issue is whether B–Line "knowingly violated" it. For the knowledge requirement to be satisfied, the violating party must possess "actual knowledge" of the court order. *Schaefer Fan Co., Inc. v. J & D Manufacturing*, 265 F.3d 1282, 1289 (Fed.Cir.2001); *Hazen v. Reagen*, 16 F.3d 921, 924 (8th Cir.1994). In making such a determination, it is crucial to note that "[t]he burden is on the petitioner to prove the violation by clear and convincing evidence." *In re Lover*, 337 B.R. at 635, quoting *In re Andrus*, 184 B.R. 311, 315 (Bankr.N.D.Ill.1995).

■ In this case, the only evidence before the Court firmly establishing when B–Line first had actual knowledge of the discharge order occurred when B–Line received notice of the Debtor's objection to claim, wherein the issue of the prior discharge was raised. But parties who have acted in apparent contempt of a court order may "purge themselves of such contempt, or avoid the contempt completely, by reversing the effect of the allegedly wrongful conduct." *Int'l Distrib. Ctr., Inc. v. Walsh Trucking Co.*, 62 B.R. 723, 728 (Bankr.S.D.N.Y.1986). Here, B–Line purged itself of any contempt which may have arisen as a result of the notice by promptly returning all of the money received from the Trustee. Thus, given B–Line's good faith effort to immediately comply with the discharge order upon receiving notice of it, an award of sanctions to the Debtor seems highly inappropriate.

■ Nonetheless, in her brief entitled "Statement to Court on the Issue of Sanctions," Debtor argues that knowledge should be imputed to B–Line before the objection was filed:

> If B–Line LLC failed to request the entire file, which should have included a discharge of the debt, they should be held accountable. There is no question that Bank of America received notice [of the discharge order] and *notice to the underlying creditor is the same as notice to any assignee.*

(Doc. No. 35, at pg. 1) (emphasis added). These propositions are unsupported by any authority; indeed, the Debtor's brief appears to be completely void of any case law or statutory citations whatsoever. Even so, knowledge of an assignor is generally not imputed to an assignee because there is no relationship which would warrant such imputation—the effect of an unqualified assignment is to divest the assignor of all rights and interests in the property and prevent the assignor from "do[ing] anything to defeat the assignee's rights." 6 AM.JUR.2D *Assignments* § 155 (2006); *See also Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir.2004) (stating that "we have not found any appellate opinion imputing creditors' knowledge to debt collectors. Knowledge may be imputed to agents, but debt collectors are independent contractors.").

Debtor also makes the related argument that B–Line may be held accountable because Bank of America should have included notice of the discharge in the file. However, to say that B–Line had actual knowledge of the discharge order because Bank of America should have included notice in the file is an argument which necessarily fails—mere speculation regarding the inclusion of discharge order in the file sent by Bank of America to B–Line is

insufficient to support a finding that B–Line had actual knowledge of it.

In addition to the foregoing arguments, the Debtor attempts to establish that an affirmative duty existed on B–Line such that it was required to serve Debtor with notice of filing the proof of claim and that failure to do so necessitates the imposition of sanctions. The Debtor urges in this respect:

> B–Line, LLC is now claiming that because debtor's attorney never contacted them to request a copy of proof of claim or demand that B–Line, LLC withdraw the claim or inform B–Line, LLC of the discharged debt [sic] somehow relieves them from sanctions. To the contrary ... since B–Line, LLC chose not to inform the Debtor of the filing of the notice of claim and given the fact that the creditor was never listed on the original bankruptcy petition, Debtor's attorney took the appropriate action ...

(Doc. No. 33, at pg. 1). This argument is again unsupported by reference to any cases or other authority. Debtor's position is further undermined by the fact that Rule 5005, which governs the filing of a proof of claim, simply requires the creditor to file the proof of claim with the clerk of court. The word "service" is not mentioned at all in Bankruptcy Rule 5005 or otherwise regarding a proof of claim. This absence is telling, particularly in light of the fact that Bankruptcy Rules 7004 and 7005 explicitly state that both "contested matters," which are governed by Bankruptcy Rule 9014, and "adversarial proceedings" require service "upon each of the parties."

Although not raised by the Parties, there are two final points worth mentioning. First, this Court may lack jurisdiction over the instant cause given the fact that the court order relied upon for the finding of contempt was not issued by this Court, but by the Bankruptcy Court for the Middle District of Georgia. The general rule is that contempt should be punished in the court issuing the order out of which the contempt arose. *See, e.g., Steers v. U.S.*, 297 F. 116 (8th Cir.1924). Finally, while Bank or America may have been liable for sanctions because they received notice of the discharge order and subsequently assigned the debt to B–Line for collection, they are not a party to this action.

For the foregoing reasons, the Court finds that B–Line is not liable for sanctions to the Debtor for its violation of the discharge injunction under 11 U.S.C. § 727 and § 524. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that the Debtor's objection to B–Line, LLC's proof of claim, be, and is hereby, SUSTAINED; and that the Debtor's request for sanctions against B–Line, LLC, be, and is hereby, DENIED.